UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Y.M.M., | Case No. 2:25-cv-02075 |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CAMMILLA WAMSLEY ET AL, | |
| Respondent. | |

## I.  INTRODUCTION

Before the Court is petitioner Y.M.M.'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 1. Y.M.M., who is detained in the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), seeks her immediate release from the custody of Respondents[1]. *Id.* ¶¶ 8, 12. For the following reasons, Y.M.M.'s petition is GRANTED.

## II.  BACKGROUND

Around December 30, 2023, Y.M.M., a citizen of Venezuela, entered the United States seeking asylum from political violence. Dkt. 4 ¶¶ 22–3. She was detained after crossing the

---

[1] Respondents include Cammilla Wamsley, Seattle Field Office Director of Immigration Customs Enforcement (ICE); Bruce Scott, Warden of the Northwest ICE Processing Center ("NWIPC"); Kristi Noem, Secretary of the Department of Homeland Security; Pamela Bondi, Attorney General; and the Department of Homeland Security (collectively "Respondents").

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

border and was released after several days on her own recognizance while removal proceedings were pending. Dkt. 1 ¶ 24. She was provided a notice to appear with her next date in immigration court being May 6, 2026. Dkt. 11-1 at 2. According to her sworn declaration, during her first year in the United States, Y.M.M. lived in Kent, Washington, where she was trafficked by a gang. Dkt. 4 ¶ 4. Y.M.M. escaped her traffickers and moved to Chicago, Illinois. *Id.* In April of 2025, Y.M.M. submitted an asylum application. *Id.* Unable to find work in Chicago, she returned to Washington. *Id.* ¶ 5. Living in a small room in Renton, Y.M.M. worked cleaning jobs while looking for an apartment she could afford. *Id.* ¶ 6. A friend had told Y.M.M. about an affordable studio apartment in Kent, and they agreed to drive to Kent together to check out the apartment. *Id.*

On August 8, 2025, after leaving the friend's apartment, a "group of armed men, with covered faces," approached Y.M.M. and her friend. *Id.* ¶ 7. After her friend was arrested, the officers approached Y.M.M. *Id.* ¶¶ 7–8. Y.M.M. provided the officers with her identification and told them about her upcoming immigration court hearing in May 2026. *Id.* ¶ 8. One officer had said it was "okay to let [Y.M.M.] go," but another officer disagreed and arrested her. *Id.* Y.M.M. was eventually brought to NWIPC and has remained there ever since. *Id.* ¶ 9; Dkt. 11-2 at 1. Respondents have not contested Y.M.M.'s account of her arrest.

The instant petition was filed on October 23, 2025. Dkt. 1. Respondents' return memorandum was filed on November 4, 2025. Dkt. 10. Y.M.M.'s traverse was filed on November 5, 2025. Dkt. 13.

### III.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States." *E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *2 (W.D. Wash. Aug. 19, 2025)

(citing 28 U.S.C. § 2241(c)(3)). A habeas petitioner must prove by the preponderance of the evidence that she is entitled to relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

It is undisputed between the parties that Y.M.M. was initially released from immigration custody on her own recognizance in January 2024. Dkt. 10 at 2; Dkt. 1 ¶ 24. It is also undisputed that she was arrested in August 2025 and has been detained in NWIPC ever since. Dkt. 10 at 2; Dkt. 4 at 2. The issue before the Court is whether her re-detention violated the Due Process clause of the Fifth Amendment or other laws of the United States.

    **A.**    **No change of circumstance justifies Y.M.M.'s re-arrest under the INA and its regulations.**

The Department of Homeland Security ("DHS") "at any time may revoke a bond or parole" issued pending a removal decision and then "rearrest the alien under the original warrant." 8 U.S.C. § 1226(b); *see also* 8 C.F.R. 236.1(c)(9). But as Respondents acknowledge in their return to the petition, it "has long been recognized by the Board of Immigration Appeals" that the discretion to revoke release "is limited to situations in which there has been a 'change [of] circumstance' since the non-citizen was initially released." Dkt. 10 at 2 (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). More specifically, a material change in circumstances as to whether "the noncitizen poses a danger to the community or an unreasonable risk of flight." *United States v. Cisneros*, No. 19-CR-00280-RS-5, 2021 WL 5908407, at *3 (citing *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006)). The Ninth Circuit and its lower courts have adopted *Sugay's* limit. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *see also Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *5 (W.D. Wash. Oct. 7, 2025); *Cisneros*, 2021 WL 5908407, at *3; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019).

Respondents identify this standard but do not make any argument that a change in circumstance supports Y.M.M.'s re-detention; indeed, their brief does not contain an argument section. *See* Dkt. 10 at 1–3. The brief appears to concede that there is no justification for Y.M.M.'s re-detention under the INA and its implementing regulations. *See id.*

### B.     Y.M.M.'s detention violates procedural due process.

The Supreme Court has consistently held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035 (N.D. Cal. 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). "[T]here may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Id.*; *see Zinermon*, 494 U.S. at 128 (noting that there are special cases where a pre-deprivation hearing is impracticable). *Id.* "However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process," particularly when the government has previously determined that an individual is eligible for release pending their removal proceedings. *Id.* Numerous courts in this district and throughout the Ninth Circuit have recognized this requirement. *See, e.g.*, *Ramirez Terra v. Wamsley*, --- F. Supp. 3d ---, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *3–4 (W.D. Wash. Sept. 12, 2025); *E.A. T.-B. v. Wamsley*, --- F. Supp. 3d ---, No. C25-1192-KKE, 2025 WL 2402130, at *2–6 (W.D. Wash. Aug. 19, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019).

It is undisputed between the parties that Y.M.M. was not provided any notice or pre-deprivation opportunity to contest her re-detention. Respondents concede that her re-detention requires a change in circumstances but have not argued that one exists. Dkt. 10 at 2. Respondents also provide no legal arguments to maintain Y.M.M.'s detention absent a hearing or change in circumstances. Accordingly, Y.M.M. has shown that her detention violates the Due Process Clause as well as the INA, and the writ of habeas corpus is GRANTED.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

## IV.   CONCLUSION

The Court appreciates the candor and professionalism of the U.S. Attorney's Office in not making an argument in favor of detention where none exists. But that office's respect for the law and its ethical obligations once this case reached its doorstep is likely a small comfort to Y.M.M., who has sat in detention for nearly three months despite no legal basis for her incarceration. Respondents point to a document stating that Y.M.M. did not request a custody redetermination hearing in front of an immigration judge after her arrest. Dkt. 11-2 at 2. But it is not hard to imagine why that opportunity may have been misunderstood or seemed futile for an asylum seeker who fled political violence for the refuge of the United States, escaped domestic human trafficking, and pieced together a living through cleaning jobs only to be arrested by masked agents who neither offered nor had any legal basis for her arrest.

Fortunately for Y.M.M., her case came to the attention of her pro bono attorneys, who have demonstrated conclusively that her detention violates the laws and the Constitution of the United States. The Court therefore GRANTS Y.M.M.'s petition and ORDERS that:

(1) Respondents shall immediately release Y.M.M. on the same conditions of release previously imposed before her re-arrest in August 2025;

(2) Y.M.M. shall not be re-detained, absent urgent circumstances, without pre-deprivation notice and opportunity to be heard in front of an immigration judge.

Dated this 6th day of November, 2025.

Tiffany M. Cartwright
United States District Judge